# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| USHA SAGARWALA, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-2860 (RC) |
| | : | | |
| v. | : | Re Document No.: | 13, 25 |
| | : | | |
| L. FRANCIS CISSNA, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Usha Sagarwala is a citizen of India who claims that the United States Citizenship and Immigration Services ("USCIS") unlawfully denied her an H-1B visa, a status granted to foreign citizens employed in "specialty occupation[s]." 8 U.S.C. § 1101(a)(15)(H)(i)(B). Seeking a court order that would require USCIS to grant her visa petition, Sagarwala brought this lawsuit against the agency's Director under the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 706. As the Court will explain below, however, review under the APA is highly deferential to agency decisions, and USCIS's decision here was supported by the record before it. Sagarwala's motion for summary judgment is therefore denied, and the USCIS Director's cross-motion for summary judgment is granted.

## II. BACKGROUND

H-1B visas are a form of legal nonimmigrant status, meaning one granted to individuals temporarily and for a particular purpose. The H-1B program's purpose is to allow American employers to temporarily hire foreign citizens to work in "specialty occupation[s]," 8 U.S.C.

§ 1101(a)(15)(H)(i)(B), defined as those requiring "theoretical and practical application of a body of highly specialized knowledge, and . . . attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States," *id.* § 1184(h)(i)(1)(A)–(B).

To participate in the H-1B program, interested employers must complete a two-step process with respect to each foreign worker they wish to hire. First, they must submit to the Department of Labor ("DOL") a Labor Condition Application ("LCA") identifying the specialty occupation position at issue and confirming that they will comply with the requirements of the program. *See* 8 U.S.C. § 1182(n)(1). Second, after DOL certifies the LCA, the employer must submit the LCA to USCIS with a Form I-129 petition requesting that the foreign worker— referred to as the petition's "beneficiary"—be classified as an H-1B nonimmigrant worker. *See* 8 C.F.R. § 214.2(h)(4). In this petition, the employer has the burden of establishing, among other things, that the position offered to the beneficiary is in fact a "specialty occupation." *See* 8 U.S.C. § 1361 ("Whenever any person makes application for a visa or any other document required for entry, . . . the burden of proof shall be upon such person to establish that he is eligible to receive such visa."). To carry that burden, the employer must show that the position satisfies at least one of four prerequisites:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
> (3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A).

Sagarwala first obtained H-1B status through this two-step process in 2012. *See* A.R. at 179, ECF No. 13-2. But in August 2018, she sought to change jobs, so her new employer, HSK Technologies, Inc., had to begin the process anew. The company completed an LCA form, which DOL certified, and then submitted the LCA to USCIS with a Form I-129 Petition and supporting documents. The submitted documents explained that Sagarwala's new position would be "QA Analyst," to be performed on-site at Anthem, Inc. in Wallingford, Connecticut, for whom HSK Technologies would provide services as a sub-contractor.[1] *Id.* at 192; *see also id.* at 194–210. An attached expert report indicated that a "QA Analyst" is essentially a software quality assurance engineer or tester—meaning someone who "[d]esign[s] tests plans . . . or procedures" and "[d]ocument[s] software defects" in order to report such "defects to software developers." *Id.* at 235. According to that expert report, such a position requires "a strong foundation in the field of Computer Information Systems, or a related field, which can only be obtained through a Bachelor's degree in the field of Computer Information Systems, or a closely related field." *Id.* at 237. HSK Technologies appeared to be more welcoming, however. According to its initial petition, it sought candidates for the QA Analyst position who possessed "a minimum of a bachelor's degree in Computer Science, Information Technology, Mathematics, Engineering or its equivalent, as well as any other interested and qualified professionals with

---

[1] The H-1B petition indicates that HSK's Technologies' client is a company called Technosoft Corporation, who in turn contracts with Anthem. *See* A.R. at 194–210.

diverse backgrounds in the sciences, technology, engineering, or mathematics, who ha[d] the necessary quantitative and qualitative critical thinking skill sets." *Id.* at 191.

Upon receiving the LCA, I-129, and supporting documents, USCIS issued a Request for Evidence ("RFE") asking for additional information about HSK Technologies' employment relationship with Sagarwala and the characteristics of the offered position. *Id.* at 12–21. HSK Technologies responded by updating its submission. That new submission began with a notable attempted correction: The company claimed that it was an "inadvertent statement" to say in its initial petition that a "wide range of specialties" could qualify someone for the QA Analyst Position. *Id.* at 25. The truth, the company said, was that the position required a bachelor's degree "in Computer Information Systems or [a] related field, such as Information Systems or [Computer Science]." *Id.*

HSK Technologies' updated submission also provided a number of new exhibits intended to quell USCIS's concerns. To address the employment relationship issue, the company included, among other things, a verification letter from Anthem, a copy of the subcontractor agreement, and Sagarwala's timesheets and paystubs. *See id.* at 33–39, 44–55. And to demonstrate that the company's QA Analyst position was a specialty occupation, the company included a purportedly more detailed description of the position, job listings of other industry positions that were apparently similar to HSK Technologies' position, and a revised expert report. *See id.* at 60–117.

USCIS concluded, however, that HSK Technologies' evidence remained insufficient and formally denied the H-1B petition. In its written decision, the agency focused its analysis entirely on whether the QA Analyst position constituted a specialty occupation for purposes of the H-1B program; the agency did not address the employment relationship issue. Apparently

either ignoring or discrediting HSK Technologies' attempted correction, USCIS began by stressing that the company had "indicated that the minimum entry requirements for the offered position [were] a wide variety of disparate fields of study." *Id.* at 4. A minimum entry requirement that encompasses such "disparate fields of study," USCIS explained, does not comport with H-1B's requirement that the degree be "in [a] specific specialty"—unless the petitioning employer "establish[es] how each field is directly related to the duties and responsibilities of the particular position." *Id.* at 5. According to the agency, HSK Technologies' evidence did not show the requisite connection.

USCIS further explained that the company had failed to demonstrate how any of the four prerequisites from 8 C.F.R. § 214.2(h)(4)(iii)(A) were satisfied. With respect to the first— whether the degree is normally the minimum requirement for entry into the particular position— the agency found that the company's reliance on the DOL's "O*NET Online" website was insufficient because the website's summary report for Software Quality Assurance Engineers and Testers made "no reference to a degree requirement in a specific specialty." A.R. at 6. And although the company's expert had said that a bachelor's degree in computer information systems was required for the position, the agency explained that the expert's report did "not cite the source of [its] information," and that the record did not contain "any corroborative evidence" that supported the expert's position. *Id.*

As for the second prerequisite, USCIS concluded that there was insufficient evidence to conclude that the required degree was "common to the industry in parallel positions among similar organizations" or that the position was "so complex or unique that it [could] be performed only by an individual with a degree." 8 C.F.R. § 214.2(h)(4)(iii)(A)(2). HSK Technologies' submitted job listings, the agency reasoned, showed that the industry normally

required some kind of bachelor's degree for parallel positions, but that a bachelor's degree in a specific specialty was usually unnecessary. A.R. at 7. And none of the submitted evidence, the agency said, identified "any tasks that [were] so complex or unique" that "only an individual with a degree in a specific specialty could perform them." *Id.* at 8.

Turning to the third prerequisite, USCIS now appeared to acknowledge HSK Technologies' attempted correction: the agency conceded that the company claimed to "normally require[] a degree or its equivalent for the position." 8 C.F.R. § 214.2(h)(4)(iii)(A)(3). But the agency explained that the company had "submitted no evidence or discussion" in support of that claim. A.R. at 8. According to USCIS, the company's "opinion alone [could] []not establish the position as a specialty occupation," because "[i]f USCIS was limited solely to reviewing a petitioner's self-imposed requirements, then any individual with a bachelor's degree could be brought to the United States to perform any occupation as long as the employer required the individual to have a baccalaureate or higher degree." *Id.*

Finally, with respect to the fourth prerequisite, the agency said that the evidence did not show that the "nature of the specific duties [were] so specialized and complex that [the] knowledge required to perform [them] [was] usually associated with the attainment of a baccalaureate or higher degree." 8 C.F.R. § 214.2(h)(4)(iii)(A)(4). In reaching that conclusion, USCIS stressed the "lack of detail" in HSK Technologies' submissions. A.R. at 9. The agency explained that, "[w]hile the proposed duties may include familiarity and experience with different technological platforms and/or applications," the company had "not described with sufficient detail" how those duties were "more specialized and complex than those of other QA Analyst positions that are not usually associated with at least a bachelor's degree in a specific specialty, or its equivalent." *Id.* And the company had not "provided evidence, such as industry

publications or letters," that highlighted "the specialized and complex nature of [its] products or services for which [Sagarwala] [would] be engaged." *Id.*

With none of the four prerequisites satisfied, USCIS concluded that the "evidence of record [did] not establish" that the QA Analyst position constituted a specialty occupation for purposes of the H-1B program. *Id.* at 9–10. It therefore denied HSK Technologies' petition. *Id.* Sagarwala responded by filing this lawsuit, asking the Court to hold USCIS's decision unlawful under the APA and order the agency to approve the petition. *See* Compl. at 9, ECF No. 1. On the same day, she also moved for a preliminary injunction that would have treated the H-1B petition as granted while the lawsuit was ongoing. *See* ECF No. 2. Upon consideration of that motion, the Court held that Sagarwala had standing to bring her APA challenge, but it declined to enter a preliminary injunction. *See* ECF No. 21. Without considering the merits of Sagarwala's claim, the Court concluded that she had failed to substantiate her allegations of irreparable harm. *Id.* Now, Sagarwala has moved for summary judgment, and USCIS has countered with its own cross-motion for summary judgment. *See* ECF Nos. 13, 25. Both motions are ripe for disposition.

### III. LEGAL STANDARD

Ordinarily, summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But this standard does not apply in cases involving review of agency action under the APA "because of the limited role of a court in reviewing the administrative record." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012). "Instead of reviewing the record for disputed facts that would preclude summary judgment, the function of the district court is a more limited one: 'to determine whether or not as a matter of

law the evidence in the administrative record permitted the agency to make the decision it did.'" *Ardmore Consulting Grp., Inc. v. Contreras-Sweet*, 118 F. Supp. 3d. 388, 393 (D.D.C. 2015) (quoting *Kaiser Found. Hosps. v. Sebelius*, 828 F. Supp. 2d 193, 198 (D.D.C. 2011)). The inquiry is "narrow," and the court "is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Indeed, the question is merely whether the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review under that standard is "highly deferential." *AT&T, Inc. v. FCC*, 886 F.3d 1236, 1245 (D.C. Cir. 2018) (quoting *Nat'l Tel. Coop. Ass'n v. FCC*, 563 F.3d 536, 541 (D.C. Cir. 2018)). The agency merely "'must examine' the relevant factors and data and articulate a 'rational connection' between the record and [its] decision." *Id.* (quoting *State Farm*, 463 U.S. at 43). The "decision need not be 'a model of analytic precision to survive a challenge.'" *Coburn v. McHugh*, 679 F.3d 924, 934 (D.C. Cir. 2012) (quoting *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995)). And a reviewing court "may 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Id.* (quoting *State Farm*, 463 U.S. at 43).

## IV. ANALYSIS

As noted above, USCIS based its denial of Sagarwala's H-1B petition on a single ground: that HSK Technologies' QA Analyst position did not qualify as a "specialty occupation" eligible under the program. But in reaching that conclusion, the agency's analysis proceeded in two parts. The first part focused on the statutory definition of specialty occupation; the agency reasoned that the position did not require the "theoretical and practical application of a body of highly specialized knowledge" or the "attainment of a bachelor's or higher degree in [a] specific

specialty," 8 U.S.C. § 1184(h)(i)(1)(A)–(B), because the minimum qualifications appeared to be from "a wide variety of disparate fields of study," A.R. at 4. According to the agency, a "minimum entry requirement of a bachelor's degree in disparate fields of study . . . does not" comply with the statutory definition, "unless [the petitioner] establish[es] how each field is directly related to the duties and responsibilities of the particular position." *Id.*

To reach that conclusion with respect to HSK Technologies' petition, USCIS relied entirely on the company's own words. As the Court noted earlier, the company said in its initial submission that it welcomed any candidates with a bachelor's in "Computer Science, Information Technology, Mathematics, Engineering or its equivalent, as well as any other interested and qualified professionals with diverse backgrounds in the sciences, technology, engineering, or mathematics, who ha[d] the necessary quantitative and qualitative critical thinking skill sets." A.R. at 191. The company then corrected that statement in response to USCIS's RFE—claiming that the QA Analyst position actually required a bachelor's degree "in Computer Information Systems or [a] related field, such as Information Systems or [Computer Science]." *Id.* at 25.

In her motion for summary judgment, Sagarwala devotes significant attention to this first part of USCIS's analysis. As she sees it, the agency has adopted a statutorily invalid "single degree rule," under which H-1B status is unavailable if multiple different degrees could qualify a candidate for the proffered position. *See* Opp'n to Def.'s Cross-Mot. Summ. J. at 10–12, ECF No. 26; *see also* Mem. Supp. Pl.'s Mot. Summ. J. at 27, ECF No. 13-1. USCIS disputes this characterization—arguing that it "does not require a single degree," but instead mandates that petitioners "tie seemingly disparate degrees to the duties of a particular position." Mem. Supp. Def.'s Cross-Mot. Summ. J. at 9, ECF No. 25-1.

The Court does not necessarily need to involve itself in this particular fight, though. "Where. . . an agency offers multiple independent grounds for a decision, '[a court] will affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable.'" *Fogo De Chao (Holdings) v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1149 (D.C. Cir. 2014) (quoting *BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1183 (D.C. Cir. 2003)); *see also Bally's Park Place, Inc. v. NLRB*, 646 F.3d 929, 939 (D.C. Cir. 2011). Here, the second part of USCIS's analysis provides such alternative grounds. In addition to its purported "single degree" analysis, the agency concluded in that second part that the QA Analyst position did not satisfy any one of the four prerequisites provided in 8 C.F.R. § 214.2(h)(4)(iii)(A). *See* A.R. at 5. And in so doing, the agency did not rely on HSK Technologies' supposedly "inadvertent statement" in its initial filing, as it had in the first part of its analysis. The agency instead focused on the evidence that the company had submitted with its petition.[2] A.R. at 25.

However one reads this regulatory scheme, § 214.2(h)(4)(iii)(A) unambiguously "create[s] a necessary . . . condition" for the issuance of a H-1B visa. *See Defensor v Meissner*, 201 F.3d 384, 387 (5th Cir. 2000) ("assum[ing] arguendo that § 214.2(h)(4)(iii)(A) creates [a] necessary and sufficient condition[] for the category of 'specialty occupation'" but acknowledging that the provision could also "be read as merely an additional requirement that a position must meet, in addition to the statutory . . . definition"). Thus, even if Sagarwala is entirely correct on the "single degree" issue, she still needs to show that the agency was wrong

---

[2] Indeed, as the Court explained earlier, even in the context of § 214.2(h)(4)(iii)(A)(3), USCIS acknowledged (perhaps for the sake of argument) that HSK Technologies "claim[ed]" that the position required a degree in a specific specialty. A.R. at 8. But USCIS nonetheless concluded that subsection (A)(3) was not satisfied because the company had failed to substantiate its claim with any evidence.

about at least one of the four § 214.2(h)(4)(iii)(A) prerequisites.  Or, perhaps more precisely,

unless one of those four USCIS conclusions was "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), there is no basis for setting aside

the agency's decision.  With all of this in mind, the Court begins its discussion by examining the

four § 214.2(h)(4)(iii)(A) prerequisites.  And because the Court finds no error in USCIS's

analysis as to those four prerequisites, the Court ends its discussion there too.  USCIS's reliance

on § 214.2 to deny the H-1B petition was not dependent on any purported "single degree" rule,

and it was rationally explained and supported by the record.  Sagarwala's APA challenge

accordingly fails.[3]

## A. Section 214.2(h)(4)(iii)(A)(1)

The first § 214.2(h)(4)(iii)(A) prerequisite permits a petitioner to make the specialty

occupation showing by demonstrating that "[a] baccalaureate or higher degree or its equivalent is

normally the minimum requirement for entry into the particular position."  8 C.F.R.

§ 214.2(h)(4)(iii)(A)(1).  Although § 214.2(h)(4)(iii)(A) does not refer to a degree in a "specific

specialty," USCIS implies such a requirement in light of the relevant statutory definition.  *See*

A.R. at 5 ("To meet this criterion you must submit evidence showing that a bachelor's degree or

higher *in a specific specialty*, or its equivalent, is normally the minimum requirement for entry

---

[3] Admittedly, at the conclusion of each of the four § 214.2(h)(4)(iii)(A) subsections of its discussion, USCIS essentially referenced back to the alleged "single degree" part of the analysis by repeating the same sentence every time: "Moreover, as discussed above, you [HSK Technologies] have not established how each of the qualifying fields of study that you have listed for the offered position is directly related to the duties and responsibilities of the position." *E.g.*, A.R. at 6–7.  However, given the brevity of this statement compared to the independent analysis that precedes it in every instance, the Court does not think that any problematic "single degree" rule taints the entirety of USCIS's reasoning.  Rather, the Court is satisfied that "the agency would clearly have acted" the same way with respect to § 214.2(h)(4)(iii)(A) even if the "single degree" ground was not available.  *Fogo De Chao*, 769 F.3d at 1149 (quoting *Bally's Park Place, Inc. v. NLRB*, 646 F.3d 929, 939 (D.C. Cir. 2011)).

into the particular position." (emphasis added)); *see also* 8 U.S.C. § 1184(i)(1)(B) (defining specialty occupation as one requiring "attainment of a bachelor's or higher degree in [a] specific specialty"); 8 C.F.R. § 214.2(h)(4)(ii) (same). Here, after taking that implied requirement into account, USCIS concluded that HSK Technologies did not submit sufficient evidence to make the necessary showing under subsection (A)(1).

The Court sees nothing arbitrary or capricious in that determination. As noted earlier, the petition relied on DOL's "O*NET Online" website, but the agency explained that the website "makes no reference to a degree requirement in a specific specialty." A.R. at 6. That observation is correct: the submitted O*Net page for "Software Quality Assurance Engineers and Testers" merely states that "[m]ost of these occupations require a four-year bachelor's degree, but some do not." *Id.* at 91.

USCIS also took note of the company's expert, who stated in his report that "the minimum educational requirements of a QA Analyst position, in accordance with conventional industry standards followed by institutions hiring skilled labor under the H1B visa program, is a bachelor's degree in Computer Information Systems or a closely related field." *Id.* at 6. But the agency reasoned that the report did "not cite the source of this information" or "contain any corroborative evidence." *Id.* According to the agency, "where an opinion is not in accord with other information or is in any way questionable, USCIS is not required to accept or may give less weight to that evidence." *Id.* There is nothing unreasonable about this aspect of the Court's reasoning either. In this instance, the expert provided his "professional opinion" in the form of conclusory, unsubstantiated statements. USCIS could have, in its discretion, accepted that professional opinion, but, absent more support, the agency certainly was not required to.

In her motion for summary judgment, Sagarwala primarily attempts to relitigate these agency decisions before the Court. As the Court already said, though, it may not substitute its own judgment for that of the agency when reviewing under the arbitrary and capricious standard. *E.g.*, *Crooks v. Mabus*, 845 F.3d 412, 423 (D.C. Cir. 2016) (citing *State Farm*, 463 U.S. at 43). The Court solely "consider[s] whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *ExxonMobil Gas Mktg. Co. v. FERC*, 297 F.3d 1071, 1083 (D.C. Cir. 2002) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). "It is not enough, then, that the court would have come to a different conclusion" than the agency. *Conservation Law Found. v. Ross*, 374 F. Supp. 3d 77, 89 (D.D.C. 2019). That is what Sagarwala essentially asks the Court to do here, though. She does not point to any evidence that USCIS should have considered when reaching its conclusion under § 214.2(h)(4)(iii)(A)(1).[4] She instead asks the Court to simply reconsider the O*NET page and the expert report and reach a different result than USCIS did. *See* Mem. Supp. Pl.'s Mot. Summ. J. at 40–41. The Court's own view of that evidence does not matter, though, so long as USCIS's treatment of it was reasonable. For the reasons the Court just provided, it was.

Unable to show any problems with USCIS's weighing of the evidence on this issue, Sagarwala's last resort is to assert a broadscale challenge to USCIS's interpretation of its own regulation. According to Sagarwala, it "strains the meaning" of § 214.2(h)(4)(iii)(A)(1) for the agency to require a minimum qualification of "'not just any baccalaureate or higher degree, but one in a specific specialty that is directly related to the offered position.'" Mem. Supp. Pl.'s

---

[4] Indeed, Sagarwala argues that USCIS should have addressed its three prior decisions that granted her H-1B status to work in software QA analyst jobs, but the present petition failed to provide the agency with any evidence that compared those prior positions to the current one. It was HSK Technologies' burden to do so.

Mot. Summ. J. at 36 (quoting A.R. at 3).  She says that this interpretation is inconsistent with § 214.2(h)(4)(iii)(A)(1)'s language—which, again, refers solely to a degree, not one in a particular subject matter.

As USCIS notes, however, § 214.2(h)(4)(iii)(A)(1) must be read in context, not in a vacuum.  And both the statutory and regulatory definitions of "specialty occupation" state that the position at issue must require the "attainment of a bachelor's or higher degree in [a] specific specialty."  8 U.S.C. § 1184(i)(1)(B); *see also* 8 C.F.R. § 214.2(h)(4)(ii).  Accepting Sagarwala's proposed interpretation—under which any job requiring a bachelor's degree would be eligible— risks expanding H-1B availability beyond those prescribed limitations.  Indeed, one could argue that the statutory and regulatory framework *compels* USCIS's reading.  But at a minimum, the agency has adopted a reasonable reading of a regulatory provision that is susceptible to more than one interpretation.  Such a reading is typically entitled to judicial deference, unless it is "plainly erroneous or inconsistent with the regulation."  *E.g.*, *Mellow Partners v. Comm'r of IRS*, 890 F.3d 1070, 1079 (D.C. Cir. 2018) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).  USCIS's interpretation here is neither.  It instead reflects the agency's "fair and considered judgment" on an issue falling within the agency's substantive expertise and is therefore "entitle[d] to controlling weight."  *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019) (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)); *see also id.* at 2415–16 (explaining that so-called *Auer* deference is appropriate when the agency rule is "genuinely ambiguous," the agency's reading is "within the zone of ambiguity," and the "character and context of the agency interpretation entitles it to controlling weight.").

Once the Court gives USCIS's interpretation such weight, there is nothing left to discuss with respect to § 214.2(h)(4)(iii)(A)(1).  Sagarwala has not shown that the agency's

interpretation of its own regulation was plainly erroneous or that the agency's treatment of the evidence lacked a rational connection to the record.  She accordingly must rely upon one of the other § 214.2(h)(4)(iii)(A) prerequisites to prevail on her APA claim.

## B.  Section 214.2(h)(4)(iii)(A)(2)

As the Court's background discussion above may have already illustrated, the second § 214.2(h)(4)(iii)(A) prerequisite is actually a two for one.  Subsection (A)(2) provides, in the disjunctive, two alternative criteria.  It says that a position constitutes a specialty occupation if "the degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree."  8 C.F.R. § 214.2(h)(4)(iii)(A)(2).

Here, in an attempt to make the first showing, HSK Technologies submitted job postings for purportedly similar positions in the industry, as well as letters of support from other companies.  USCIS found this evidence insufficient because the letters merely indicated that a bachelor's degree was required for most parallel positions—not that a degree in a specific specialty was.  And the letters from other companies, the agency said, were not supported by "documentation to verify that their respective companies routinely employ bachelor's degree recipients to perform the duties of a QA Analyst."  A.R. at 7.

Having performed its own careful review of the record, the Court cannot say that these determinations were arbitrary, capricious, or an abuse of discretion.  The several job postings that were submitted with the petition suggest that employers' hiring practices vary when it comes to quality assurance analyst positions.  Some, like Ace Technologies and Ciber Inc., ask for a bachelor's in computer science.  *See id.* at 78, 85.  Others, like Sagarwala's end client here,

Anthem, ask for a bachelor's in computer science or information systems, but those positions also appear to be "senior" roles, and even then, the listings welcome candidates with "any combination of education and experience" that "would provide an equivalent background." *Id.* at 63–69. Another group of employers, though, are still more inviting. Avventis and CCC Information Systems, for example, both ask for a bachelor's degree in any "related area" or "field." *Id.* at 79, 83. And then Bluecube and Quidd do not even go that far; they merely ask for a bachelor's degree without specifying any field. *Id.* at 81, 87.

Based on this assorted evidence, it was not unreasonable for USCIS to conclude that a bachelor's degree was common across the industry in parallel positions, but that one in a specific specialty was not. Could the evidence have supported the opposite conclusion as well? Perhaps, but, again, the Court's role under the APA is limited to ensuring that the agency "articulate[d] a 'rational connection' between the record and [its] decision." *AT&T*, 886 F.3d at 1245 (quoting *State Farm*, 463 U.S. at 43). USCIS's examination of the industry job postings here passes that test.

As for the industry letters, there are only two of them. The first is from the President of Softova, Inc. (presumably another tech consulting firm) and says that "[i]t is clear that at least a Bachelor's Degree in Computer Science, Computer Information Systems, or related field is required for the position of Quality Analyst and that it is common in the . . . industry . . . to require one." A.R. at 95. The second, from the Director of Amiti Consulting Corp., similarly states that "all QA Analyst[s] that Amiti . . . hire[s] must hold at least a Bachelor's Degree in Computer Science or a closely related field." *Id.* at 97. USCIS was correct in its written decision when it noted that neither letter was supported by "documentation." *Id.* at 7. More importantly, though, the Court agrees that the two letters by themselves "do[] not establish that

the position requires the expertise of a bachelor's degree recipient *throughout the industry*." *Id.* (emphasis added). Taking the letters together with the job listings, it appears that some employers require a degree in a specific specialty for these positions, but others do not. Without more, it was not an abuse of discretion for USCIS to conclude that HSK Technologies had not established that "the degree requirement [was] common to the industry in parallel positions among similar organizations." 8 C.F.R. § 214.2(h)(4)(iii)(A)(2).

Turning to the second part of subsection (A)(2)—whether the position "is so complex or unique that it can be performed only by an individual with a degree"—USCIS's discussion shows that HSK Technologies provided little evidence on that front. Indeed, the company submitted only a one-page, bullet-point list of job duties. And some of the listed duties are quite vague, such as "Responsible for the set of tasks and techniques used to work as a liaison among stakeholders in order to understand the structure, policies, and operations of an organization," or "Working with a team of java developers, database administrators and a technical product owner . . . [a]s part of the team as Software quality analyst." A.R. at 61. Without more, it would be difficult to conclude that such amorphous duties are "so complex or unique" as to require an individual with a degree in a specific specialty. Other listed duties, though less vague, are not self-evidently complex, like "Validating data retrieved from the DB." *Id.* ("DB" meaning database?) A few duties then might well be more complex, but a lay person is unlikely to understand what they mean from HSK Technologies' jargon-heavy explanations. Take, for example, the responsibility to "Test[] API Web services using Rest Assured using JSON format with JAVA and POSTMAN," or the responsibility to "Work[] on Selenium-Grid to do the multi browser." *Id.* It was HSK Technologies' burden to explain what these duties actually entail. Incoherence does not equate to complexity.

Absent more detailed, accessible evidence, then, the Court sees nothing unreasonable in USCIS's determination that HSK Technologies did "not sufficiently identify any tasks that are so complex or unique or provide sufficient explanation of why only an individual with a degree in a specific specialty could perform them." *Id.* at 8. Sagarwala now argues that "USCIS lacks any . . . familiarity with the technical nature of [HSK Technologies'] business, and is not situated to opine if one position is more complex than another." Mem. Supp. Pl.'s Mot. Summ. J. at 44. The petitioning employer, Sagarwala says, is in the best "position to determine how complex a position is compared to other positions in the organization or industry." *Id.* But Sagarwala does not point to any legal authority that requires USCIS to defer to employers in this context. And petitioning employers' expertise in this area means that they should be able to explain the complexity of their jobs to the agency in terms the agency is likely to understand. HSK Technologies failed to do that here.

Sagarwala also appears to contend that the agency has not provided "intelligible standards" that define what it means for a position to be "unique" or "complex" within the meaning of the regulation. Mem. Supp. Pl.'s Mot. Summ. J. at 43. USCIS is under no obligation, however, to make broad legal pronouncements when issuing its adjudicatory decisions. *See United Food & Comm. Workers Int'l Union, AFL-CIO, Local No. 150-A v. NLRB*, 1 F.3d 24, 34 (D.C. Cir. 1993) ("[A]n agency's authority to proceed by adjudication, as opposed to rulemaking, implies a power to fill interstices in the law by proceeding case by case." (citation omitted) (citing *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 295 (1974))). And nothing about the agency's decision is inconsistent with the plain meanings of "complex" or "unique." Based on the limited evidence HSK Technologies provided, it was not

arbitrary, capricious, or an abuse of discretion for USCIS to conclude that the company simply had not met its burden.

## C.  Section 214.2(h)(4)(iii)(A)(3)

The third § 214.2(h)(4)(iii)(A) prerequisite allows a position to qualify as a specialty occupation if the "employer normally requires a degree or its equivalent for the position."  8 C.F.R. § 214.2(h)(4)(iii)(A)(3).  USCIS concluded that HSK Technologies failed to make that showing here because the company submitted "no evidence or discussion" beyond its own unsubstantiated claims.  A.R. at 8.  Whether Sagarwala now even challenges that conclusion is unclear, as she does not expressly invoke subsection (A)(3) in her summary judgment briefing. But in any event, the Court finds nothing unreasonable in USCIS's determination that evidence was required to support the company's assertions.  As the agency put it, "[i]f USCIS was limited solely to reviewing a petitioner's self-imposed requirements, then any individual with a bachelor's degree could be brought to the United States to perform any occupation as long as the employer required the individual to have a baccalaureate or higher degree."  *Id.* at 8.  It instead makes sense to demand that the petitioning employer demonstrate, with at least some minimum amount of evidence or reasoning, that its imposed requirements are genuine.  *Cf. Defensor*, 201 F.3d at 388 (reasoning that, if USCIS could consider only an employer's claimed job qualifications, "then any alien with a bachelor's degree could be brought in to the United States to perform a non-specialty occupation, so long as that person's employment was arranged through an employment agency" that required all clients to have specialty bachelor's degrees). Because HSK Technologies made no attempt to substantiate its claimed requirements in this

case, the Court finds nothing arbitrary or capricious in USCIS's decision with respect to § 214.2(h)(4)(iii)(A)(3).[5]

### D. Section 214.2(h)(4)(iii)(A)(4)

The final § 214.2(h)(4)(iii)(A) prerequisite allows a petitioner to make the specialty occupation showing by demonstrating that the "nature of the specific duties is so specialized and complex that [the] knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree." 8 C.F.R. § 214.2(h)(4)(iii)(A)(4). In concluding that HSK Technologies had not made that demonstration, USCIS said that, although the duties appeared to "include familiarity and experience with . . . technological platforms," the company had "not described with sufficient detail" how those duties were specialized and complex. A.R. at 9.

For many of the same reasons already provided in the context of subsection (A)(2), the Court finds USCIS's analysis on this point to be reasonable. Again, to prove that the QA Analyst position was complex, HSK Technologies submitted only that one-page list of duties, and the most complex-sounding of those duties were heavy on jargon. The company failed to provide any accessible explanation of what those responsibilities actually entailed. Meanwhile, the evidence from other employers in the industry indicated that, for similar jobs, some of those employers required a bachelor's degree in a specific specialty, but that others did not. As USCIS

---

[5] As the Court noted earlier when discussing subsection (A)(2), HSK Technologies did submit two job postings from Anthem, Inc., the end-client for whom Sagarwala would have provided services if the H-1B petition had been granted. *See* A.R. at 63–69. In the Court's view, such postings from an end-client are the kind of evidence that a petitioning employer could provide to make the necessary showing under § 214.2(h)(4)(iii)(A)(3). *See Defensor*, 201 F.3d at 388. Here, though, USCIS did not discuss these Anthem postings in the context of subsection (A)(3), and Sagarwala makes no argument now that the agency should have. Perhaps that is because the Anthem postings are for "senior" positions, which Sagarwala's QA Analyst job does not appear to be.

observed, HSK Technologies did not provide any comparative discussion that indicated how the duties of its QA Analyst position were "more specialized and complex than those of other QA Analyst positions that are not usually associated with at least a bachelor's degree in a specific specialty." *Id.*

In arguing that this agency reasoning was erroneous, Sagarwala merely repeats the same arguments that she made with respect to subsection (A)(2). She says that petitioning employers are entitled to deference on this issue because they are in a better position than the agency to judge complexity, and that USCIS has failed to articulate standards that define the terms "complex" or "specialized." The Court, of course, already rejected these arguments. Once again, Sagarwala fails to identify any evidence that the agency should have relied on but did not. The Court's conclusion with respect to subsection (A)(4) is therefore the same as it was for subsections (A)(1), (2), and (3).

## V.  CONCLUSION

For the foregoing reasons, USCIS did not act arbitrarily or capriciously in concluding that HSK Technologies' petition satisfied none of the four 8 C.F.R. 214.2(h)(4)(iii)(A) prerequisites. Accordingly, there is no basis under the APA for setting aside the agency's decision. Sagarwala's motion for summary judgment (ECF No. 13) is **DENIED**, and the USCIS Director's motion (ECF No. 25) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 15, 2019                                    RUDOLPH CONTRERAS
                                                    United States District Judge