UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| USHA SAGARWALA, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-2860 (RC) |
| | : | | |
| v. | : | Re Document No.: | 30 |
| | : | | |
| KENNETH T. CUCCINELLI, Senior Official Performing the Duties of the Director, United States Citizen and Immigration Services,[1] | : | | |
| | : | | |
| Defendant. | : | | |

# MEMORANDUM OPINION

### Denying Plaintiff's Motion to Alter or Amend Judgment

This case involves a challenge to a decision by United States Citizenship and Immigration Services ("USCIS") denying an H-1B petition that was filed on behalf of Plaintiff, Ms. Usha Sagarwala. In a memorandum opinion resolving the parties' cross-motions for summary judgment, the Court rejected Plaintiff's challenge and concluded that USCIS's denial was adequately justified. Ms. Sagarwala now seeks to alter the Court's judgment, arguing that it rested on a misapplication of the law. Additionally, Ms. Sagarwala asks the Court to invoke its equitable powers to stay the accrual of unlawful presence for the period between the filing of the action and the entry of the order. For the reasons explained below, the Court denies the motion in both respects.

---

[1] Mr. Kenneth T. Cuccinelli is automatically substituted for Former Director L. Francis Cissna. *See* Fed. R. Civ. P. 25(d).

## I.  BACKGROUND

A thorough explanation of the H-1B program, and Ms. Sagarwala's efforts to secure a visa through it, are included in the Court's memorandum opinion granting summary judgment for USCIS.  *See Sagarwala v. Cissna*, 387 F. Supp. 3d 56, 59–62 (D.D.C. 2019).  A brief summary is provided here for orientation.

### A.  Legal Framework

Under the H-1B program, non-citizens can temporarily work in the United States if they are sponsored by an employer in a "specialty occupation."  Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(15)(H)(i)(b).  For the purposes of the H-1B program, the INA defines a "specialty occupation" as one that requires "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States."  8 U.S.C. § 1184(i)(1).  In line with that statutory definition, the applicable regulations define a specialty occupation as one that "requires the attainment of a bachelor's degree or higher in a specific specialty" or its equivalent, plus "theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts."  8 C.F.R. § 214.2(h)(4)(ii) ("Definitions").  The next subparagraph in the regulations provides more specific criteria (or prerequisites) as to what qualifies:

> To qualify as a specialty occupation, the position must meet one of the following criteria:
> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its

>
> particular position is so complex or unique that it can be performed only by an individual with a degree;
> (3) The employer normally requires a degree or its equivalent for the position; or
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

*Id.* § 214.2(h)(4)(iii)(A) ("Criteria for H-1B petitions involving a specialty occupation"); *see also Defensor v. Meissner*, 201 F.3d 384, 387 (5th Cir. 2000) ("assum[ing] arguendo that § 214.2(h)(4)(iii)(A) creates [a] necessary and sufficient condition[] for the category of 'specialty occupation'" but acknowledging that the provision could also "be read as merely an additional requirement that a position must meet, in addition to the statutory . . . definition").

### B. Case History

Ms. Sagarwala sought authorization to work as a "QA Analyst"—that is, "a software quality assurance engineer or tester"—for a company called HSK Technologies. *Sagarwala*, 387 F. Supp. 3d at 60. However, as this Court's opinion explained, USCIS rejected the petition, and did so "on a single ground": "that HSK Technologies' QA Analyst position did not qualify as a 'specialty occupation' eligible under the program." *Id.* at 63. The Court noted that USCIS's analysis "proceeded in two parts." *Id.* First, "because the minimum qualifications appeared to be from 'a wide variety of disparate fields of study,'" *id.* (quoting AR[2] at 4), the agency concluded "that the position did not require the 'theoretical and practical application of a body of highly specialized knowledge' or the 'attainment of a bachelor's or higher degree in [a] specific specialty,'" *id.* (quoting 8 U.S.C. § 1184(h)(i)(1)(A)–(B)). Second, "USCIS further explained

---

[2] "AR" refers to the version of the administrative record filed by Plaintiff, ECF No. 13-2. USCIS has separately certified an index of the record of the petition, *see* ECF No. 18, but a full version of the certified record does not appear on the electronic docket. However, both parties refer to the version filed by the Plaintiff, and the Court follows suit.

that the company had failed to demonstrate how any of the four prerequisites from 8 C.F.R. § 214.2(h)(4)(iii)(A) were satisfied." *Id.* at 61.

In upholding USCIS's decision, the Court declined to endorse the first part of the agency's analysis, in part because it relied on evidence that HSK had initially submitted and then attempted to withdraw. *Id.* at 64. Instead, the Court reasoned that the second part of the agency's analysis—that is, its conclusion that none of the four § 214.2(h)(4)(iii)(A) prerequisites were satisfied by the submitted evidence—provided independent grounds for USCIS's decision. *See id.* "And because the Court [found] no error in USCIS's analysis as to those four prerequisites, the Court end[ed] its discussion there too." *Id.* at 64–65.

Twenty-eight days after the Court entered judgment for USCIS, Ms. Sagarwala filed the presently-pending motion. *See* Mot. to Alter J. and for Relief Pursuant to FRCP 59 and 60 ("Pl.'s Mot."), ECF No. 30; *see also* Pl.'s Mem. in Supp. of Mot. to Alter J. ("Pl.'s Mem."), ECF No. 30-1. In the motion, Ms. Sagarwala primarily argues that the Court was excessively deferential to USCIS and misapplied then-existent case law. *See* Pl.'s Mot. at 1–2. Separately, she requests that the Court alter the judgment to prohibit the accrual of unlawful presence for the periods between the filing of the action and the entry of the order, "or at a minimum, exclude[e] time attributed to delays beyond the Plaintiff's control." *Id.* at 1. USCIS opposes in both respects, *see* Def.'s Mem. in Opp'n to Pl.'s Mot. ("Def.'s Opp'n"), ECF No. 32, and the motion is now ripe for the Court's consideration.

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 59(e)

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Such a motion "is discretionary and need not be granted

unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).

Absent a demonstrated intervening change of controlling law or new evidence, litigants cannot invoke Rule 59(e) "either to repeat unsuccessful arguments or to assert new but previously available arguments." *Slate v. Am. Broad. Companies, Inc.*, 12 F. Supp. 3d 30, 34 (D.D.C. 2013). And "clear error" within the meaning of Rule 59(e) is "a very exacting standard," *Bond v. U.S. Dep't of Justice*, 286 F.R.D. 16, 22 (D.D.C. 2012) (quoting *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 422 (D.D.C. 2005)), such that the "final judgment must be 'dead wrong.'" *Lardner v. FBI*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)). Similarly, "manifest injustice" means "more than just a clear and certain prejudice to the moving party, but also a result that is fundamentally unfair in light of governing law." *Slate*, 12 F. Supp. 3d at 35–36.

### B. Federal Rule of Civil Procedure 60(b)(6)

Rule 60(b) provides a separate "mechanism for relief from a judgment or order by permitting the court to relieve a party or its legal representative from a final judgment, order, or proceeding[.]" *Oladokun v. Corr. Treatment Facility*, 309 F.R.D. 94, 97 (D.D.C. 2015). Unlike a motion under Rule 59(e), it must only be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). The burden falls to the party seeking relief to "[show] that he or she is entitled to relief." *Oladokun*, 309 F.R.D. at 97. The final decision to grant or deny a Rule 60(b) motion is "committed to the discretion of the District Court," *United Mine Workers 1974 Pension v.*

5

*Pittston Co.*, 984 F.2d 469, 476 (D.C. Cir. 1993), which "balance[s] the interest in justice with the interest in protecting the finality of judgments," *Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004).

Here, Ms. Sagarwala's motion does not invoke any particular provision of Rule 60(b) (such as those involving fraud, mistake, or newly discovered evidence, *see* Fed. R. Civ. P. 60(b)(1)–(5)), so the Court construes it as a motion under the Rule's catch-all provision, *see* Fed. R. Civ. P. 60(b)(6) (authorizing relief for "any other reason that justifies relief"). Rule 60(b)(6) motions "should only be granted in 'extraordinary circumstances.'" *Riley v. BMO Harris Bank, N.A.*, 115 F. Supp. 3d 87, 94 (D.D.C. 2015) (quoting *Ackermann v. United States.*, 340 U.S. 193, 199 (1950)); *see also Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) ("[P]laintiffs must clear a very high bar to obtain relief under Rule 60(b)(6).").

### C.  The Standard Governing This Motion

"A motion to reconsider a final order is generally treated as a Rule 59(e) motion if it is filed within the filing time limit set forth in that rule—as [Ms. Sagarwala's] was—and as a Rule 60(b) motion if it is filed thereafter." *Roane v. Gonzales*, 832 F. Supp. 2d 61, 64 (D.D.C. 2011). This is logical and fair, given "Rule 60(b) is slightly more restrictive than Rule 59(e)." *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 17 (D.D.C. 2010). Accordingly, the Court will primarily analyze Plaintiff's arguments through the lens of Rule 59(e), although any difference between the Rule 59(e) and Rule 60(b) standard is unlikely to matter in the end. *See Stephenson v. Chao*, No. 19-cv-2256, 2020 WL 122984, at *2 (D.D.C. Jan. 10, 2020) ("Under [both rules], a movant must clear a high bar and a district court has considerable discretion in deciding whether to grant relief.").

6

### III. ANALYSIS

#### A. Motion to Alter Judgment

1. *Auer* Deference

As the Court reads the motion, Ms. Sagarwala's main argument is that the Court improperly deferred to USCIS under *Auer v. Robbins*, 519 U.S. 452 (1997) and subsequent cases that clarify when so-called *Auer* deference is appropriate. *See* Pl.'s Mem. at 5 ("The Court should alter its judgment because it granted *Auer* deference without considering the required analysis under *Kisor*, and contradict [sic] the D.C. Circuit decision in *Fogo de Chao v. USCIS*."). Although Ms. Sagarwala raises a variety of arguments under this general banner, the Court's opinion actually only invoked *Auer* in a narrow context—specifically, with respect to USCIS's reading of the first of the four § 214.2(h)(4)(iii)(A) prerequisites.[3] *See Sagarwala*, 387 F. Supp. 3d at 66. To recall, that criterion provides that a position qualifies as a specialty occupation if "[a] baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position." 28 C.F.R. § 214.2(h)(4)(iii)(A)(1). Focusing on this language, Ms. Sagarwala had argued in her motion for summary judgment that the USCIS erred when it required, as a minimum qualification, not just *any* baccalaureate or higher degree, but

---

[3] Thus, for example, the Court is not able to follow Plaintiff's suggestion that the Court inappropriately "granted the agency *Auer* deference and determined that its interpretation of *8 C.F.R. § 214.2(h)(4)(ii)* was reasonable." Pl.'s Mem. at 6 (emphasis added). Likewise, Plaintiff suggests that USCIS "lacks the 'substantive expertise' needed under *Kisor* to make its own determination on the degree requirement." *Id.* at 14. Even assuming USCIS lacks that expertise, the Court did not invoke *Auer* (and thus trigger *Kisor*'s additional requirements) as to the USCIS's degree requirement determination as a whole. Rather, as the memorandum opinion explained, the Court applied the normal level of deference accorded to an agency under the Administrative Procedure Act to USCIS's evaluation of each of the four regulatory prerequisites. *See Sagarwala*, 387 F. Supp. 3d at 63 (noting that review under the APA's arbitrary and capricious standard is "highly deferential") (quoting *AT&T, Inc. v. FCC*, 886 F.3d 1236, 1245 (D.C. Cir. 2018)).

one in a specific specialty that was directly related to the offered position. *Sagarwala*, 387 F. Supp. 3d. at 66. The Court rejected this argument. It noted Plaintiff's objection that the criterion "refers solely to a degree, not one in a particular subject matter." *Id.* But the Court agreed with USCIS that "§ 214.2(h)(4)(iii)(A)(*1*) must be read in context, not in a vacuum" and observed that "both the statutory and regulatory definitions of 'specialty occupation' state that the position at issue must require the 'attainment of a bachelor's or higher degree in [a] specific specialty.'" *Id.* (quoting 8 U.S.C. § 1184(i)(1)(B) and citing 8 C.F.R. § 214.2(h)(4)(ii)). Thus, as the Court explained:

> Accepting Sagarwala's proposed interpretation—under which any job requiring a bachelor's degree would be eligible—risks expanding H-1B availability beyond those prescribed limitations. Indeed, one could argue that the statutory and regulatory framework *compels* USCIS's reading. But at a minimum, the agency has adopted a reasonable reading of a regulatory provision that is susceptible to more than one interpretation. Such a reading is typically entitled to judicial deference, unless it is "plainly erroneous or inconsistent with the regulation." USCIS's interpretation here is neither. It instead reflects the agency's "fair and considered judgment" on an issue falling within the agency's substantive expertise and is therefore "entitle[d] to controlling weight."

*Id.* (first quoting *Auer*, 519 U.S. at 461, then quoting *Kisor v. Wilkie*, 139 S.Ct. 2400, 2417 (2019)).

Ms. Sagarwala suggests here that this invocation of *Auer* deference was inappropriate, first because § 214.2(h)(4)(iii)(A)(*1*) was not "genuinely ambiguous," Pl.'s Mem. at 7 (quoting *Kisor*, 139 S.Ct. at 2417), and second because USCIS's interpretation was not "official and authoritative," *id.* However, neither critique hits the mark. The Court found, and still finds, that provision was ambiguous—that is, "susceptible to more than one interpretation"—not because any of its words were unclear, but because of its obvious ill-fit with other regulatory and statutory language. *Sagarwala*, 387 F. Supp. 3d. at 66. This approach is fully consistent with *Kisor*, which explicitly requires courts to "'carefully consider[]' the text, structure, history, and

purpose of a regulation, in all the ways it would if it had no agency to fall back on," before concluding that a regulation is genuinely ambiguous. *Kisor*, 139 S. Ct. at 2415 (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 707 (1991) (Scalia, J., dissenting)). Similarly, *Kisor* indeed cautioned that a court should only defer to an agency's "'authoritative' or 'official position,' rather than any more ad hoc statement not reflecting the agency's view." *Id.* at 2416 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 257–59, n.6 (2001) (Scalia, J., dissenting)). But USCIS's statement here, although articulated in an ordinary visa adjudication, does not appear to be *ad hoc* or unreflective of the agency's actual views; to the contrary, the decision purports to relate and apply the considered views of the agency. *See* AR at 3 ("To be consistent with section 214(i)(1) of the Act, [USCIS] interprets the term 'degree' set forth in the criteria at 8 CFR, section 214.2(h)(4)(iii)(A) to mean not just any baccalaureate or higher degree, but one in a specific specialty that is directly related to the offered position."). Ms. Sagarwala offers no specific grounds for concluding that this approach to the regulatory language was *ad hoc*, unrepresentative, or unofficial (*e.g.*, by offering evidence it diverged from the agency's previously-held views or was developed for mere convenience). *Cf. Shieldalloy Metallurgical Corp. v. Nuclear Regulatory Comm'n*, 768 F.3d 1205, 1209 (D.C. Cir. 2014) (noting that "[d]eference is appropriate even if the agency's interpretation first appears during litigation, unless the interpretation conflicts with prior interpretations or amounts to nothing more than a convenient litigating position") (internal citations and quotations omitted)).[4]

---

[4] The Court also notes that, even in the absence of *Auer* deference, USCIS's reading of § 214.2(h)(4)(iii)(A)(1) would likely prevail. *See Sagarwala*, 387 F. Supp. 3d. at 66 ("[O]ne could argue that the statutory and regulatory framework *compels* USCIS's reading."); *see also Raj & Co. v. USCIS*, 85 F. Supp. 3d 1241, 1246 (W.D. Wash. 2015) (noting that "requiring [only] a generalized bachelor degree would run contrary to congressional intent to provide a visa program for specialized, as opposed to merely educated, workers").

9

2. Statutory Authority to Engage in Adjudicative Rulemaking

Separately, Ms. Sagarwala challenges the Court's decision insofar as it stated that USCIS has "authority to proceed by adjudication as opposed to rulemaking." Pl.'s Mem. at 18–19 (quoting *Sagarwala*, 387 F. Supp. 3d at 69). Ms. Sagarwala's argues that, in fact, "USCIS does not have discretion to change its rules, standards, and policies through adjudication" and therefore "cannot demand more than the descriptions, attestations, explanations, etc. that it instructs petitioners to provide." *Id.* at 21. For support, Ms. Sagarwala cites *Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, a case in which our Circuit declined to grant *Chevron* deference to a regulatory interpretation of a statutory term by USCIS's Administrative Appeals Office ("AAO"). 769 F.3d 1127, 1136–37 (D.C. Cir. 2014). Specifically, the Circuit found that the AAO's decision was not "marked by the qualities that might justify *Chevron* deference in the absence of a formal adjudication or notice-and-comment rulemaking." *Id.* at 1137. Similarly, Plaintiff suggests, the "USCIS service center decision at issue in this case, which is subordinate to the AAO, surely lacks" those same qualities. Pl.'s Mem. at 20.

Again, however, the Court cannot accept the Plaintiff's characterization of its opinion, or see the suggested relevancy of *Fogo De Chao*. The Court made the challenged observation when discussing one prong of the second regulatory prerequisite: that is, evaluating whether Ms. Sagarwala had provided sufficient evidence to demonstrate that the position was "so complex or unique that it can be performed only by an individual with a degree." 8 C.F.R. § 214.2(h)(4)(iii)(A)(2). The Court noted:

> Sagarwala also appears to contend that the agency has not provided "intelligible standards" that define what it means for a position to be "unique" or "complex" within the meaning of the regulation. USCIS is under no obligation, however, to make broad legal pronouncements when issuing its adjudicatory decisions. *See United Food & Comm. Workers Int'l Union, AFL-CIO, Local No. 150-A v. NLRB*, 1 F.3d 24, 34 (D.C. Cir. 1993) ("[A]n agency's authority to proceed by

10

> adjudication, as opposed to rulemaking, implies a power to fill interstices in the law by proceeding case by case."). And nothing about the agency's decision is inconsistent with the plain meanings of "complex" or "unique." Based on the limited evidence HSK Technologies provided, it was not arbitrary, capricious, or an abuse of discretion for USCIS to conclude that the company simply had not met its burden.

*Sagarwala*, 387 F. Supp. 3d at 69 (additional citations omitted). The Court was simply making the point that USCIS was permitted to apply the regulatory terms "complex" and "unique" in a particular adjudication, and that its application of those terms here was not arbitrary or capricious. In other words, the agency was not—in light of the plain meanings of the words "complex" and "unique"—required to further define those terms through additional rulemakings or guidance. Nothing in the cited portions of *Fogo De Chao*, which concern the types of agency statements that can qualify for the application of *Chevron* deference, suggests otherwise.

### B. Request to Stay Accrual of Unlawful Presence

When a nonimmigrant remains in the United States beyond the time authorized by an H-1B visa, so-called "unlawful presen[ce]" begins to accrue. 8 U.S.C. § 1182(a)(9)(B)(i)(I). If an individual remains unlawfully present between 180 days and one year, he or she is deemed inadmissible to the United States for a period of three years. *Id.*; *see also Stellar IT Sols., Inc. v. USCIS*, No. 18-cv-2015, 2018 WL 6047413, at *11 (D.D.C. Nov. 19, 2018). However, if the sponsoring employer files an H-1B extension petition and that petition remains pending, a nonimmigrant is allowed to work and unlawful presence does not accrue. *See* 8 C.F.R. § 214.2(h)(2)(i)(H)(2) (providing that aliens previously approved for H-1B status are "authorized to start . . . new employment" if a "nonfrivolous" petition to extend that H-1B status based on the new employment has been filed on behalf of the alien and remains pending).

Here, the agency issued a final decision on the petition on November 1, 2018. In doing so, USCIS warned of the potential consequences of remaining in the United States. *See* AR at 10

("This decision may leave the beneficiary without lawful immigration status. If the beneficiary is present in the United States in violation of the law, he or she is required to depart immediately."). However, at least as Ms. Sagarwala calculated, she still "had until April 30, 2019 before she accrued immigration penalties under 8 U.S.C. § 1182(a)(8)(B)(i)." Pl.'s Mem. at 3. With that date now having passed, Ms. Sagarwala represents that she and her family "are now subject to a three-year bar to readmission to the United States." *Id.* at 4. And this is so, even though Ms. Sagarwala pursued her right to judicial review "in a timely manner"—that is, by filing this case on December 6, 2018, roughly one month after the petition was denied. *Id.* Ms. Sagarwala therefore asks the Court to use its "equitable authority" to stay the date of accrual of unlawful presence beyond that April 30, 2019 date. *Id.* at 3.

The Court is sympathetic to Ms. Sagarwala's situation. As this case demonstrates, it may not always be possible to secure a final judicial ruling within 180 days. Thus, an individual whose petition has been denied and who intends to seek judicial review may face a difficult choice: either (1) remain in the United States and hope to prevail in federal court, knowing that delays may lead to a three year ban from the United States; or (2) uproot one's life and leave the United States before receiving the judicial review to which one is entitled.

Despite these considerations, the Court does not perceive a strong legal or equitable basis for granting the requested relief in these circumstances. First, such a request is procedurally inappropriate. "Rule 59(e) motions are aimed at reconsideration, not initial consideration," and arguments raised for the first time on a Rule 59(e) motion may be deemed "waived." *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012). Ms. Sagarwala's motion for summary judgment (as well as the supporting memorandum) did not seek or discuss a stay of accrual of unlawful status. *See* Pl.'s Mot. Summ. J. at 1, ECF No. 13 (moving only for orders

"declaring Defendant's final agency action in this case to be unlawful" and "directing the Defendant to approve the petition"); *see also* Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 13-1. Accordingly, the Court's order and opinion granting summary judgment did not consider the issue in the first instance; as such, there is nothing to reconsider. Second, Ms. Sagarwala's memorandum in support of her motion here does not cite any case in support of her argument for a retroactive stay, and the Court is not aware of any case that has lifted penalties that have already accrued under 8 U.S.C. § 1182(a)(9)(B)(i). Courts have, as Ms. Sagarwala points out in her reply, considered the accrual of unlawful presence when weighing the likelihood of irreparable harm in the context of a motion for a preliminary injunction, and crafted remedies accordingly. *See* Pl.'s Reply at 1, ECF No. 35. Thus, for example, this Court entered a preliminary injunction staying the effectiveness of a USCIS decision denying a petition, with the result that, "for legal purposes, [petitioner] was never without lawful immigration status, and the 180-day clock for 8 U.S.C. § 1182(a)(9)(B)(i)(I) never began to run." *Stellar IT Sols.*, 2018 WL 6047413, at *12. Of course, the Court did so only after concluding that the plaintiff had satisfied the standard for a preliminary injunction, including demonstrating a likelihood of success on the merits. *Id.* at *11. Similarly, another court "halt[ed] the accrual of unlawful presence time and/or unauthorized employment for all class members during the pendency of this litigation" after finding that plaintiffs had "a fair chance of success on the merits" and that a stay would "continue the *status quo ante litem*." *Ruiz-Diaz v. United States*, No. C07-1881, 2008 WL 3928016, at *2 (W.D. Wash. Aug. 21, 2008). This kind of relief is explicitly contemplated by the APA, which allows a reviewing court "to postpone the effective date of an agency action or preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. However, different considerations are at play here, when the case has been fully litigated on the

merits and Ms. Sagarwala's unlawful status has, as she represents, already accrued beyond 180 days.

In this case, Ms. Sagarwala had the opportunity to seek a preliminary injunction, and did in fact do so. *See* Mot. for Prelim. Inj., ECF. No. 3. However, as the Court noted in resolving that motion against her, her claimed injuries related only to economic harm and did not mention that she could be prohibited from residing in the United States. *See Sagarwala v. Cissna*, No. 18-cv-2860, 2019 WL 1649943, at *3 (D.D.C. Apr. 16, 2019). Separately, however, "four months after filing her motion for preliminary injunction, Sagarwala filed a notice with the Court indicating for the first time that, as a result of the H-1B denial, she will be legally prohibited from residing in the United States beginning on April 30, 2019." *Id.* at *3 n.2 (citing Notice of Imminent Accrual of Unlawful Presence, ECF No. 19). Observing that the notice "lacked detail or legal support" and that "the USCIS Director has not yet had an opportunity to respond to it," the Court declined to consider it in resolving the then-pending motion for a preliminary injunction. *Id.* However, the Court invited Ms. Sagarwala to "renew her motion for preliminary injunction based on this new claimed harm," *id.*, which Ms. Sagarwala did shortly thereafter, *see* Second Mot. for Prelim. Inj., ECF No. 22. The second motion was ultimately denied as moot, as the Court was able to decide the case on the merits before resolving it. *See* Minute Order (July 15, 2019). Plaintiff's request here effectively attempts to relitigate that decision, and the Court sees no basis for doing so.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to alter or amend judgment is **DENIED**.[5]

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated: April 30, 2020                                                                 RUDOLPH CONTRERAS
                                                                                      United States District Judge

---

[5] Along with her reply in support of this motion, Ms. Sagarwala included a "Notice of Supplemental Authority," which the Court has reviewed. *See* Pl.'s Reply at 2–6. The notice concerns certain USCIS training materials that allegedly provide incorrect guidance on applying § 214.2(h)(iii)(4)(A)(1) and interpreting related language in the Department of Labor's *Occupational Outlook Handbook*. *Id.* at 5. However, the allegedly improper guidance (which explains how adjudicators should evaluate whether a specialized degree is "normally" required for a particular kind of position) is unrelated to USCIS's grounds for decision in this case. Here, USCIS found that the petition did not provide sufficient evidence that a specialized degree (as opposed to a general degree) was required for the position *at all*, and the Court did not find this conclusion arbitrary or capricious. *See Sagarwala*, 387 F. Supp. 3d at 65.